JUDGE STANTON

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

12 CV 9220

SPARTA COMMERCIAL SERVICES, INC.,

                        Plaintiff,

- against -

DZ BANK AG DEUTSCHE ZENTRAL-
GENOSSENSCHAFTSBANK, FRANKFURT AM
MAIN, NEW YORK BRANCH,
                        Defendant.

Index No.:

**COMPLAINT**

**Jury Trial Demanded**

**ECF Case**

RECEIVED DEC 1 8 2012 U.S.D.C. S.D.N.Y. CASHIERS

Plaintiff, Sparta Commercial Service, Inc. ("Sparta" or "Plaintiff"), through its attorneys, Scarinci & Hollenbeck, LLC, as and for its Complaint against Defendant, DZ BANK AG DEUTSCHE ZENTRAL-GENOSSENSCHAFTSBANK, FRANKFURT AM MAIN, NEW YORK BRANCHDZ Bank AG ("Defendant"), alleges upon personal knowledge as to itself and its own acts, and upon information and belief as to all other matters, as follows:

### INTRODUCTION

1. In the period commencing in 2007 and continuing through December 18, 2009, Defendant and Sparta entered into and maintained a business relationship pursuant to which Defendant agreed to provide Sparta with a $25 million line of credit to support Sparta's business of financing purchases and leases of motorcycles and sport utility vehicles. During the relevant period, Sparta came to rely upon and trust Defendant for certain information and advice related to the line of credit.

2. In negotiating the line of credit, Defendant made materially misleading and false statements to Sparta. Then, in the summer and fall of 2009 Defendant made false statements

{00726584.DOC}

related to the renewal of the credit line to induce Sparta not to draw down on the line. Sparta relied on the misleading and false statements to its detriment.

3. Sparta seeks to recover damages based on the Defendant's breach of fiduciary duties owed to Sparta by Defendant and for fraud. As a result of Defendant's breach of fiduciary duties owed to Sparta and Defendant's fraud, Sparta suffered damages to its business and reputation, and the trading price of Sparta's stock suffered a substantial decrease in price, causing Sparta and its shareholders to suffer further damages as alleged below.

## PARTIES, JURISDICTION AND VENUE

4. Sparta is a Nevada corporation with principal offices at 370 Lexington Avenue, New York, New York.

5. Sparta common stock is publicly traded in the Over-the-Counter Bulletin Board under the symbol SRCO.

6. Defendant is a German corporation with principal offices in Germany.

7. This Court has subject matter jurisdiction in this action pursuant to 28 U.S.C. § 1332.

8. Personal jurisdiction over the parties is conferred by the written agreement of the parties.

9. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(d). Additionally, Defendant executed a written agreement specifically consenting to such venue.

## CLAIMS FOR RELIEF

### COUNT ONE
### BREACH OF FIDUCIARY DUTIES

10. Plaintiff repeats and realleges the statements and allegations made in paragraphs 1 through 9 above, as more completely set forth therein.

{00726584.DOC}

11. On or about May 25, 2007, the parties executed an engagement letter that confirmed the parties' intent to enter into an agreement whereby Defendant would exclusively provide financing for Sparta's retail installment sales and leasing contracts.

12. On or about August 19, 2008, the parties executed a commitment letter (the "Commitment Letter") in which Defendant agreed to extend liquidity and/or credit enhancement to facilitate the financing for Sparta's retail installment sales contracts and leases.

13. Subsequently, the parties entered into the Revolving Credit Agreement ("RCA") on or about December 19, 2008, as contemplated in the Commitment Letter. The term of the RCA was one year, allowing Sparta to draw up to $25 million of credit. The RCA gave Defendant the exclusive right to provide Sparta with the line of credit.

14. Beginning in October 2009, Sparta received communications from Defendant, including Defendant's Senior Vice President, Chris Tucker and Vice President, Jeff Willner, in which Defendant confirmed that it would be exercising its exclusive right to extend the initial terms of the RCA for another year.

15. Around the same time, in October 2009, Sparta notified Defendant that it had met or would meet all of its requisite conditions of the RCA to draw down on the line of credit and that it intended to do so. Sparta and Defendant each represented to one another that they intended to extend the RCA for another year. In October 2009, Chris Tucker urged Sparta to hold off on drawing down on the $25 million line of credit until Defendant completed the line extension process. Sparta complied with Defendant's direction on the basis of Defendant's New York branch officers having represented to Sparta that they had authority to determine the extension of Sparta's line of credit and would take actions to extend the term of the RCA for another year.

16. Sparta had incurred costs of more than $1 million for fees paid to Defendant and

others for expenses, such as commitment fees, structure fees, legal fees, monthly non-use fees and other costs, in order to secure and maintain the $25 million line of credit.

17. Sparta had also entered into a letter of intent to acquire a substantial loan portfolio in reliance upon Defendant's assurance that it would renew the credit line.

18. In or about late December 2009, however, Sparta learned that Defendant's New York branch officers had ultimately lied to Sparta in October 2009 about the authority they had to approve the renewal and had made a negative internal recommendation despite the exact opposite representations it had previously made to Sparta.

19. Defendant then declined to extend the RCA for another year and Sparta later learned that Defendant had been directed to take steps to reduce the credit extended by DZ Bank AG to third parties down from $4 billion to $2 billion for reasons of DZ Bank's own internal issues. Had Defendant provided Sparta with truthful information in October 2009, Sparta would have commenced drawing down on the credit line at that time, loans would have run-off over the life of the portfolio, and then Sparta could have secured an alternative financing source to provide a credit line once the RCA terminated on December 18, 2009.

20. Sparta and Defendant had numerous oral and written communications during the 2007 through 2009 period of their business relationship. These communications evidence Sparta's trust and reliance upon the truthfulness of the information and advice contained in Defendant's communications.

21. In October 2009, Defendant provided information and advice to Sparta in connection with the renewal of the $25 million credit line that Defendant knew was false. At the time when Defendant's New York credit department was representing to Sparta that the line of credit was going to extended for another term, it knew that Defendant had already decided that it

was not going to exercise its right to extend the line of credit for another term. Defendant knew that Sparta would rely upon the information and advice and intended that Sparta do so. Sparta relied on the information and advice given to it by Defendant throughout their relationship, as set forth herein, and suffered damages.

22. Upon information and belief, in October 2009, Defendant's New York credit department knew that Sparta's line of credit would not be renewed as it had been instructed by the Defendant's German headquarters. Nonetheless, Defendant failed to inform Sparta of the decision and instead represented Sparta that the line of credit was being renewed.

23. Instead of being truthful and informing Sparta that it would recommend non-renewal, Defendant informed Sparta through its New York credit department that the credit line would be renewed. When the line of credit was not renewed, Sparta learned that Defendant purposely misled them. Defendant cited the weakness in the US economy as the basis for its decision not to exercise its right to extend the RCA for another term.

24. The alleged acts constitute breaches of fiduciary duties that Defendant owed to Plaintiffs.

25. From 2007 through 2009, the Defendant participated in a pattern of activities that included breaches of fiduciary duties, the sending of false communications through wire to persons in New York, and the communications of untrue statements made by Defendant to Sparta and others regarding the Sparta line of credit, regarding the manner in and reasons for which it determined to grant the line of credit and the manner in which and the reasons for which it determined not to renew the line of credit.

26. The RCA and its ancillary agreements, together with certain acts and communications alleged above, established a relationship of trust between the parties under

which Sparta reposed confidence in Defendant, appointed Defendant as its agent and reasonably relied on Defendant's representations, thereby giving rise to a fiduciary relationship.

27. Defendant owed Plaintiff the duty of due care and loyalty.

28. By virtue of the facts alleged, Defendant has materially breached its fiduciary duties owed to Plaintiff.

29. Based on the acts alleged herein and as a result of Defendant's breaches, Sparta has sustained damages in the amount of $84 million or such other amount as may be determined by the Court.

## COUNT TWO
## FRAUD

30. Plaintiff repeats and realleges the statements and allegations made in paragraphs 1 through 29 above, as more completely set forth therein.

31. More specifically, Defendant made material misrepresentations and omissions to Sparta related to the line of credit and its renewal, with the intent that Sparta would rely on said representations and omissions and not draw down on the line of credit.

32. Sparta subsequently did reasonably relied on Defendant's misrepresentations as set forth in paragraphs 14, 15, 17, 18, 19, 21, 22, 23 and 24, above.

33. Based on the acts alleged herein and as a result of Defendant's fraud, Sparta has sustained damages in the amount of $84 million or such other amount as to be determined by the Court.

## COUNT THREE
## NEGLIGENT MISREPRESENTATTION

34. Plaintiff repeats and realleges the statements and allegations made in paragraphs 1 through 33 above, as more completely set forth therein.

{00726584.DOC}

6

35. Sparta had the right to expect Defendant to provide correct information.

36. Defendant made material misrepresentations and omissions to Sparta in connection with Sparta's $25 million line of credit and its renewal.

37. Defendant knew said representations and omissions to be false when made.

38. Sparta reasonably relied on the misrepresentation and omissions to its detriment.

39. As a result of Defendant's negligent misrepresentation, Sparta has sustained damages in the amount of $84 million or such other amount as may be determined by the Court.

### COUNT FOUR
### BREACH OF THE IMPLIED COVENANT OF
### GOOD FAITH AND FAIR DEALING

40. Plaintiff repeats and realleges the statements and allegations made in paragraphs 1 through 39 above, as more completely set forth therein.

41. Sparta and Defendant entered into the RCA.

42. Defendant acted in bad faith with the purpose of depriving Sparta of rights and benefits under the RCA, as more fully described herein.

43. Defendant has caused Sparta to sustain damages.

44. Based on the acts alleged herein and as a result of Defendant's breaches, Sparta has sustained damages in the amount of $84 million or such other amount as may be determined by the Court.

### COUNT FIVE
### PROMISSORY ESTOPPEL

45. Plaintiff repeats and realleges the statements and allegations made in paragraphs 1 through 44, above, as more completely set forth therein.

46. Defendant made false representations regarding the renewal of Sparta line of credit, on which it expected Sparta to rely and temporarily abstain from drawing down on its line of credit.

47. Defendant knew that the representations it was making to Sparta were false when they were made.

48. Sparta reasonably relied to its detriment on the representations of Defendant's New York credit department that Sparta's line of credit would be renewed for another term, and consequently, withheld on drawing down on its line of credit.

49. Based on the acts alleged herein and as a result of Defendant's breaches, Sparta has sustained damages in the amount of $84 million or such other amount as may be determined by the Court.

**WHEREFORE**, the Plaintiff prays for judgment on its claims as follows:

A. an award of $84 million to Sparta;

B. treble damages in favor of the Plaintiff and against the Defendant in such amount as may be proven at trial, but in any event not less than $252 million; and

C. all costs incurred by the Plaintiff in connection with Plaintiff's attempts to recover its losses, including attorneys' fees, together with interest on all of the foregoing elements of compensatory damages set forth above;

and such other relief that this Court may deem just and proper.

Dated: December 18, 2012
New York, New York

Respectfully submitted,

Dan Brecher, Counsel (DB-5308)
Scarinci & Hollenbeck, LLC
*Attorneys for Plaintiff*
99 Park Avenue, 16th Floor
New York, New York 10016
(212) 286-0747
dbrecher@scarincihollenbeck.com

{00726584.DOC}