ORIGINAL

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```

**SPARTA COMMERCIAL SERVICES, INC.,**

    Plaintiff/Counter Defendant,

- against -

**DZ BANK AG DEUTSCHE ZENTRAL-GENOSSENSCHAFTSBANK, FRANKFURT AM MAIN, NEW YORK BRANCH,**

    Defendant/Counter Claimant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/21/15

12 Civ. 9220 (LLS)

**OPINION & ORDER**

After prevailing at trial, defendant DZ Bank moves for summary judgment granting its counterclaim for indemnification of its attorneys' fees and disbursements.

## BACKGROUND

In December 2008, plaintiff Sparta Commercial Services, Inc. ("Sparta"), DZ Bank, and several other parties entered into a Revolving Credit Agreement or "RCA" to provide for the issuance of a line of credit for Sparta's business financing consumer motorcycle purchases and leases. However, Sparta was unable to meet the preconditions to draw down on the line of credit, and the RCA expired in December 2009, before any funds were advanced under it.

Sparta then sued DZ Bank, asserting various claims which were ultimately reduced to breach of the implied covenant of good faith and fair dealing. DZ asserted a counterclaim for indemnification of its cost of defense. Sparta's claims were

dismissed after an eight-day bench trial, and DZ Bank asserts that under the express language of the RCA it is entitled to be reimbursed for its attorneys' fees and disbursements.

## DISCUSSION

Sparta was the servicer as defined in the RCA. DZ Bank is included among the "Indemnified Parties" as that term is defined, and the RCA explicitly includes attorneys' fees within the definition of "Indemnified Amounts." Section 11.2(a) of the RCA addresses indemnities by the servicer:

> Without limiting any other rights that any such Person may have hereunder or under Applicable Law, the Servicer hereby agrees to indemnify each Indemnified Party, forthwith on demand, from and against any and all Indemnified Amounts [defined by § 11.1(a) as "damages (exclusive of consequential damages), losses, claims, liabilities and related costs and expenses, including reasonable attorneys' fees and disbursements"] awarded against or incurred by any such Indemnified Party by reason of any acts or omissions of the Servicer, excluding, however, [list of irrelevant exceptions], including, but not limited to (i) any representation or warranty made or deemed made by the Servicer under or in connection with any Transaction Document, any Servicing Report, Servicer's Certificate or any other information or report delivered by or on behalf of the Servicer pursuant hereto, which shall have been false, incorrect or misleading in any respect when made or deemed made, (ii) the failure by the Servicer to comply with any Applicable Law, (iii) the failure of the Servicer to comply with its covenants under this Agreement or the other Transaction Documents, (iv) any litigation, proceedings or investigation against the Servicer (v) the failure to vest (in the case of the initial Servicer) and maintain vested in the Administrative Agent (in the case of the initial Servicer and each Successor Servicer (if any)), as agent for the Secured Parties, a first priority perfected security interest in the Collateral, free and clear of any Lien (other than Permitted Liens) whether existing at the time of any Advance or at any time thereafter (including, without limitation, as the result of the failure to file, or any delay in filing, financing statements, continuation statements or

other similar instruments or documents under the UCC of any
applicable jurisdiction or other Applicable Law with respect
to any Collateral), (vi) any failure of the Servicer to
perform its duties under the Transaction Documents with
respect to any Collateral, (vii) solely with respect to the
initial Servicer, the failure of any Receivable represented by
the initial Servicer to be an Eligible Receivable to be an
Eligible Receivable on the date of the applicable
representation, (viii) any inability to obtain any judgment
in, or utilize the court or other adjudication system of, any
state in which an Obligor may be located as a result of the
failure of the Servicer to qualify to do business or file any
notice or business activity report or any similar report,
(ix) any action taken by the Servicer in the enforcement,
servicing or collection of any Collateral, (x) solely with
respect to the initial Servicer, any claim, suit or action of
any kind arising out of or in connection with the breach of
any Applicable Law with respect to the Collateral or the
Transaction Documents or the ownership or operation of any
Powersports Vehicle, including any vicarious liability,
(xi) the failure by the Servicer to pay when due any Taxes for
which the Servicer is liable, including without limitation,
sales, excise or personal property taxes payable in connection
with the Collateral, or (xii) the commingling of Collections
on the Collateral by the Servicer at any time with other
funds.

Calica July 17, 2015 Decl. Ex. 1 ("RCA") at 104-05 (Dkt. No. 85).

DZ Bank argues that "Section 11.2 provides broadly for indemnification of all Indemnified Amounts incurred by an Indemnified Party by reason of any acts or omissions of the Servicer. The advancement by Sparta of its meritless suit is plainly an 'act' as that term is commonly and ordinarily understood." Mem. Law Supp. Def.'s Mot. for Summ. J. at 2 (Dkt.

No. 84).[1]

## LAW

In accordance with its choice of law provision, the RCA is governed by New York law.

In litigation over claims for indemnification of attorneys' fees, New York law draws a substantial and decisive distinction between clauses which provide for indemnification of one contracting party by another arising from litigation between the parties to the contract themselves, on the one hand, and such claims arising from a contracting party's defense of a suit by a non-party to the contract (such as a contracting party's customer), on the other hand. For example, a financier of a business might see a need for protection against claims by the business's customers, but not with respect to the business itself with which the financier has contract rights.

The New York Court of Appeals treats the typical clauses "which contemplate reimbursement when the indemnitee is required to pay damages on a third-party claim" as different from those "referable to claims between the parties themselves or support an inference that defendant promised to indemnify plaintiff for

---

[1] DZ Bank also argues that it is protected by Section 11.1 of the RCA, which addresses indemnities by the borrower, on the theory that Sparta has stepped into the shoes of the borrower in this litigation. However, applying Section 11.1 is equally (and for the same reasons) governed by the same analysis of DZ's motion.

counsel fees in an action on the contract." Hooper Assocs., Ltd. v. AGS Computs., Inc., 74 N.Y.2d 487, 492, 549 N.Y.S.2d 365, 367 (1989). In that case, the Court of Appeals held that an indemnity clause did not apply to suits between the contracting parties where notice and assumption provisions had no application to such suits and would be superfluous if the clause applied to them:

> Our interpretation also is supported by other provisions in the contract which unmistakably relate to third-party claims. Thus, article 9(D) requires plaintiff to "promptly notify" defendant of "any claim or litigation to which the indemnity set forth in Sub-Paragraph 9(A) shall apply" and it further provides that defendant "may assume the defense of any such claim or litigation with counsel satisfactory to [plaintiff]." To extend the indemnification clause to require defendant to reimburse plaintiff for attorney's fees in the breach of contract action against defendant would render these provisions meaningless because the requirement of notice and assumption of the defense has no logical application to a suit between the parties. Construing the indemnification clause as pertaining only to third-party suits affords a fair meaning to all of the language employed by the parties in the contract and leaves no provision without force and effect (see, Corhill Corp. v. S.D. Plants, 9 N.Y.2d 595, 599, 217 N.Y.S.2d 1, 176 N.E.2d 37).

Id. at 492-93, 549 N.Y.S.2d at 367. "It is a cardinal rule of construction that a court should not 'adopt an interpretation' which will operate to leave a 'provision of a contract . . . without force and effect.'" Corhill Corp. v. S.D. Plants, Inc., 9 N.Y.2d 595, 599, 217 N.Y.S.2d 1, 3 (1961) (ellipsis in Corhill) (quoting Muzak Corp. v. Hotel Taft Corp., 1 N.Y.2d 42, 46, 150 N.Y.S.2d 171, 174 (1956)).

In the RCA, there are two such clauses which show the

inconsistency of applying the general indemnity clause to claims between DZ Bank and Sparta. Sections 11.2(a)(i) and (iii) provide that Sparta will indemnify DZ Bank for damages and attorneys' fees caused by DZ's reliance on Sparta's knowing misstatements or failures of Sparta to perform. Subdivision (i) gives indemnity for "any representation or warranty made or deemed made by the Servicer [Sparta] under or in connection with any Transaction Document, any Servicing Report, Servicer's Certificate or any other information or report delivered by or on behalf of the Servicer pursuant hereto, which shall have been false, incorrect or misleading in any respect when made or deemed made." Subdivision (iii) gives indemnity for "the failure of the Servicer [Sparta] to comply with its covenants under this Agreement or the other Transaction Documents." DZ Bank would naturally wish to be indemnified by Sparta for the consequences of such derelictions by Sparta. The balance of the subdivisions of Section 11.2(a) relate more generally to disputes involving non-parties to the RCA.[2]

But if the wide indemnity characterized by Section 11.2(a) as covering "any acts or omissions" of Sparta were to be applied

---

[2] DZ Bank says subdivision (x) provides it with indemnity in this case, but a reading of the full subdivision, with its reference to the collateral and the operation of any powersports vehicle giving rise to vicarious liability, leaves that conclusion far from "unmistakably clear."

to such disputes as this litigation with DZ Bank, there would be no need or use for subdivisions (i) and (iii). They would be duplicative and superfluous. That is strong evidence that the broad indemnity language was not intended to apply to this litigation between DZ Bank and Sparta.

According to the Second Circuit, applying New York law, an indemnification clause does not extend to attorneys' fees in a suit between the contracting parties themselves unless the language of the contract is unmistakably clear that the parties intended that indemnification:

> Under the general rule in New York, attorneys' fees are the ordinary incidents of litigation and may not be awarded to the prevailing party unless authorized by agreement between the parties, statute, or court rule. See Bourne Co. v. MPL Communications, Inc., 751 F. Supp. 55, 57 (S.D.N.Y. 1990); A.G. Ship Maint. Corp. v. Lezak, 69 N.Y.2d 1, 5, 511 N.Y.S.2d 216, 503 N.E.2d 681 (1986); Mighty Midgets, Inc. v. Centennial Ins. Co., 47 N.Y.2d 12, 21-22, 416 N.Y.S.2d 559, 389 N.E.2d 1080 (1979). This policy "provides freer and more equal access to the courts . . . [and] promotes democratic and libertarian principles." Mighty Midgets, Inc., 47 N.Y.2d at 22, 416 N.Y.S.2d 559, 389 N.E.2d 1080. Accordingly, while parties may agree that attorneys' fees should be included as another form of damages, such contracts must be strictly construed to avoid inferring duties that the parties did not intend to create. See Hooper Assocs., Ltd. v. AGS Computers, Inc., 74 N.Y.2d 487, 491, 549 N.Y.S.2d 365, 548 N.E.2d 903 (1989).
> Promises by one party to indemnify the other for attorneys' fees run against the grain of the accepted policy that parties are responsible for their own attorneys' fees. See id. at 492, 549 N.Y.S.2d 365, 548 N.E.2d 903. Under New York law, "the court should not infer a party's intention" to provide counsel fees as damages for a breach of contract "unless the intention to do so is unmistakably clear" from the language of the contract. Id. at 492, 549 N.Y.S.2d 365, 548 N.E.2d 903; see also Zissu v. Bear, Stearns & Co., 805 F.2d 75, 79 (2d Cir. 1986)(agreement did not "meet the requisite level of specificity" to support an award of attorneys' fees

in a security fraud suit); Eastman Kodak Co. v. STWB Inc., 232 F. Supp. 2d 74, 95 (S.D.N.Y. 2002) ("[t]he contractual language must evince an 'unmistakable intention' to indemnify"); Hooper, 74 N.Y.2d at 491-92, 549 N.Y.S.2d 365, 548 N.E.2d 903 (holding that the plaintiff could not recover attorneys' fees from the defendant without express language in the agreement permitting such a recovery); Tokyo Tanker Co. v. Etra Shipping Corp., 142 A.D.2d 377, 536 N.Y.S.2d 75, 77-78 (1st Dep't 1989) (noting that an indemnity provision "'should not be extended to include damages which are neither expressly within its terms nor of such character that it is reasonable to infer that they were intended to be covered under the contract'" (quoting Niagara Frontier Transp. Auth. v. Tri-Delta Const. Corp., 107 A.D.2d 450, 487 N.Y.S.2d 428, 431, aff'd, 65 N.Y.2d 1038, 494 N.Y.S.2d 695, 484 N.E.2d 1047 (1985))).

Oscar Gruss & Son, Inc. v. Hollander, 337 F.3d 186, 199 (2d Cir. 2003) (alterations in original).

Although the RCA's indemnification clause reads broadly, under New York law its two subdivisions which would become superfluous if it provided indemnification of DZ Bank's attorneys' fees in a lawsuit by Sparta against DZ for breach of contract (and are not superfluous but functional if the indemnification clause is strictly construed) require that strict construction, which also complies with New York's requirement that indemnification of attorneys' fees be expressed "unmistakably."

**CONCLUSION**

DZ Bank's motion for summary judgment granting its counterclaim for indemnification (Dkt. No. 82) is denied.

Unless either party raises other matters before January 15, 2016, the Clerk will enter judgment in favor of DZ Bank

dismissing the complaint, with costs and disbursements according to law.

So ordered.

Dated:   New York, New York
         December 18, 2015

                                    _____
                                    LOUIS L. STANTON
                                    U.S.D.J.